This video was made in Cooperation with the Shimane Prefecture Tourism Promotion Division. Briefly, I want to just respond to the bifurcating suggestion that was just made. In contrast to the, I think, motivations that were ascribed to it, I think bifurcating and actions like that by the Secretary of Defense, their continued attempt to help veterans get any benefit possible. And when you consider that many of these issues are bifurcated or even identified as part of the duty to assist when they're at the board level, it's natural that you're going to have board decisions in which the claim that was presented in the first place may be denied, but that something comes up during the process in which the Secretary taking advantage of the duty to assist says, well, let's look at it from this angle and let's look at it from that angle. But that's exactly the problem, isn't it? One of the theories was disposed of, and on the remaining theory, it was remanded for further proceedings. The theory that the VA identified during the process, yes. And all right, so that's helpful to the veteran. However, we're saying that after the veteran goes through that succeeding process and loses on the merits, he can't appeal anything. Well, this court in the earlier decision began with the language of the statute, and I think we're here today to talk about whether Henderson alters that. The statute, as this court indicated when discussing the comparison between them, the CDA statute, has language in it which suggests that you shall appeal as opposed to may appeal that exists in 7107. Shall appeal the final decision, but you're telling us that when the board and then the veterans court says that there is an issue that can support your claim and remands for development of that issue, there is no appeal because the decision was final before. So I would refer the court to 38 U.S.C. 511, decisions of the secretary finality, which I think also addresses the suggestion earlier about the place for Rule 54B. The final decision of the claim, not that one or more issues of the claim had been resolved. Well, 511 states that the secretary shall decide all questions of law and fact necessary to a decision by the secretary under a law that affects the provision of benefits by the secretary to veterans or their dependents. So the secretary's position is that when the issues become bifurcated in the course of the proceeding, the veteran is then deprived of future appellate rights unless he takes immediate appeal on those issues that are disposed of? Prior to Henderson, one would say yes, given the jurisdictional nature. Henderson said that 120 days was not jurisdictional. The Henderson had been disposed of on that issue, and these other aspects, that it was barred by the statute of limitations, and these other aspects were not considered. So what Henderson does, Your Honor, is, if you will, if the court, which I sense, is concerned about perhaps the harshness of the earlier decision when 7266 is considered in a jurisdictional sense, provides the claimant with the right to seek relief if he's untimely in his claim presentation through a waiver or an equitable-based argument. So, in fact, when we look at this decision through the spectrum of Henderson, it, I think, resolves the concerns that one might have with the veterans' court's focus on what we would believe is a larger picture of the veterans' community, not, as this court has said in Sears, the veteran-friendly principle isn't viewed through the prism of an individual veteran. It's viewed in a larger sense. And when, like this court, when it held for purposes of judicial economy and flexibility with the CDA, the veterans' court, in reviewing a similar relationship between its lower review, found that to promote the efficiency and expeditious provision of benefits to veterans, it should be the veterans' court that should be making these decisions about inextricably intertwined and consistent with the plain language of the statute, final decisions of the board should be immediately appealed. And, incidentally, as we indicated in our brief, that's consistent with the long-standing appeal language. You're telling us that the issues must be inextricably intertwined? These are separate issues of injury and recovery. Well, one thing we suggest in our brief is that there's no suggestion on the other side as to where the boundaries are to the idea that the veteran has discretion. So the VA says the boundary is hostile to the veteran. VA sees that a bright-line test, which every veteran can understand and generally does understand through their empirical view of the process over the years, in which where the decision, and the decisions I think Judge Lurie may have asked a question earlier, the board decisions do have separate components. As the record in this case demonstrates, there's a component that says the finally decided portion, and if there's a remand, there's a portion that says that. So it's very clear in the board decisions whether something has been finally decided by the board. And the appeal language specifically instructs that where you have been in the statute, I'll just refer to that since it's right in front of me, the statute says where a person is adversely affected by the decision shall file a notice of appeal. The appeal language is contained with these board decisions and has been such since 1988 or before. Even though the case is still pending on remand? That's an interesting question. What is pending on remand? It was remanded. A general desire and maybe, if you will, a claim or a different claim for veterans' benefits. But what was finally, like in this case, there's a direct service connection claim under 1110, which is the general direct service connection provision by statute. That claim, that was denied, finally denied in 1998 by the board. What was sent back was a claim under a different statutory provision, 1117, as I indicated during the course of the claim process, VA suggested to the veteran that perhaps because he was a Persian Gulf War veteran, he might have a basis to receive veterans' benefits under that statute. But it hadn't been developed as it should have been, so they sent it back. But those are different claims. That's so far from the very confined BCA, you know, CDA process, where you have the final agency action, which is then subject to the board's review. And what you were analyzing, this court was analyzing in Brownlee and J.C. Equipment and such, is that higher level relationship between a lower reviewing body and this court. Here we're talking about the final agency action itself. And the nature of that action, there's going to be some finality associated with the board decision, and sometimes there's going to be, pursuant to the duty to assist, some non-finality. And what VA has done over the years is make it clear to the veteran the difference between those two and the consequences associated with the board decisions in which part of it is finally decided and part of it is not. And that's consistent with the plain language of the statute, to appeal within 120 days. And so we're here, and this court, recognizing that the earlier decision in this case no longer exists, but this court understood that at the time. And we're here today to talk about how does Henderson change that. Now Henderson changes it by making... We're here today to handle this appeal. This other law that applies besides Henderson. And so another law that could apply, or a suggestion, would be Sanders, the earlier decision in the Veterans Court involving the Veterans Court by the Supreme Court. Sanders talks to the question of the unique perspective that the Veterans Court has on formulating procedural rules for the processing of veterans' claims. That's what we're here to talk about today is the Veterans Court procedural rule, which, through their experience, suggests that it would be better overall for the veterans' process that the Veterans Court be the arbiter of questions like inextricably intertwined. And the only way that they can be that arbiter... There is no procedural rule which says that you must appeal when you have an adverse decision on one of the issues, but others are still being litigated. How is the veteran to know to implement the way this is going? The veteran must always take the intervening appeal, when take his chances, his or her chances, that wherever the appeal is taken is going to say, all right, this is sufficiently final, we're going to review it, or come back when you get a final decision. Two or three years later, and I don't know what additional costs and legal fees, the veteran then, in order to preserve the right to appeal the issue, which was not finally decided, has to go through all of these machinations. I don't think that that applies in any kind of appellate agency or court process. And to interpret the law and the procedures in a manner that's favorable to veterans, that often are not represented by counsel at the early stage, seems curious. And if that is to be the position of the VA, I would think it must be made explicitly clear that the appeal must be taken, not we'll let you know when we get around to it. Let me suggest, Your Honor, a different perspective. One that the Veterans Corp might have in a case in which they see a lot of remands that they send back to the board. One which they think, if they had a more active role in trying to correct board errors at an earlier stage, provision of benefits to those veterans comes earlier. I think when we read the Veterans Corp's decision in both this more recent case and the one in 2009, that's what sort of undergirds what the Veterans Corp is about here. They recognize that they are trying to take an active role in making sure veterans get their benefits at the earliest possible stage. And they're doing so in a way that's consistent with the plain language of the statute and that's consistent with the plain language in the appeal provisions that are attached to the board decisions. And frankly, I think, outside of this case, maybe consistent with the way claimants tend to act when dealing with board decisions. They tend to appeal them right away when they're adversely affected. So I'm not saying, I don't see any change here as a result of that. The other side's position would allow that. That is, it would allow the claimant to be the one in consultation, perhaps with counsel. I forget exactly where in this process counsel come in to say, it's really pointless for you to take this appeal. Here's what you're going to lose. So proceed, spend your resources on the remaining one. Or the claimant can say, I may not have to spend my resources on the remaining claim because I've got a pretty good chance of winning this appeal. And then the claimant takes it early. Yes. I mean, I think the implication of your question, it would be, again, this goes to the individual versus the systemic or larger picture. So clearly, entertaining Mr. Tyroo's theory that discretion should solely reside with the veteran and he could wait however long he wants to raise an appeal. At some level, that's appealing in the sense that everybody, whenever I have, if you will, all the power, it's going to be better for me. And I use this in the highest. But what the Veterans Court is suggesting here is from a systemic perspective, that may not be the most veteran-friendly perspective to have, and that the Veterans Court would be in the best position to try to make sure that the system works smoothly by interceding at an earlier stage than would be the case if each and every veteran would hold off on appealing a finally decided issue simply because something else, maybe a wholly unrelated issue, as we suggest in our brief, would be the case. But there doesn't seem to be any boundaries around the suggestion that's being offered by Mr. Tyroo's. Again, the case came up in the sense of an inextricably intertwined type situation, which the Veterans Court has always recognized as something that would merit delay on their part, pending further action on the part of the agency. But there really doesn't seem to be any boundaries applied. Why would it be limited to inextricably intertwined? Why wouldn't every veteran who had a knee injury and a post-traumatic stress disorder, two completely different separate things, completely different analyses, can simply, you know. Well, I agree that there's not perfect overlap because Ron talks about aching joints. But there is some significant overlap here. There's a common concern about lung problems, whatever the etiology. In this case, the inextricably intertwined aspect is present. But what we're suggesting simply was in response to your Honor's suggestion of what's wrong, again, if every veteran had the ability to not file his claims until he had, in his own mind, determined that all my claims are over. When is that? Do we look back in the record when he has finally decided a claim and then when it's remanded and on the remand some other claim gets, oh, maybe you should look at it this way. Is that part of the original remanded claim now? And so now we're waiting for the finality to that? I mean, there's a never-ending process here where the veteran could, and given the duty to assist, Mary will likely have a claim sort of devolve over time under the view of the original case or the appropriate statute of regulation that may exist. He may not be entitled to benefits. But further evaluation, evidence, examination may reveal a possible other avenue of relief, allowing the veteran to hold this was what creates the inefficiencies in the system that the veterans court at least is trying to get its hands around. And as we indicated and suggested earlier, it seems to be an appropriate action on the part of the veterans court given the Supreme Court's recognition that it has a unique role in the process of veterans benefits. So we would suggest that given the plain language and the unique role of the veterans court, this court should affirm the decision in this case. Okay. Thank you, Mr. Hockey. Mr. Whitman. There's a number of points I wanted to respond to. What the Secretary overlooked is before Ty Roos, you had a case called Harris. And Harris is the case, the landmark case, that set forth this inextricably intertwined doctrine. Now, if you look at the Harris case itself, it had two separate claims. We're not talking about two issues within one claim, no dispute. I believe it was a physical injury and then secondary to it was a mental disability. And they felt that the court said these overlap enough that they're inextricably intertwined. Now, that case was decided in 1991. It's the first set of cases when the court was created. Now, we have 18 years later. And so I want to back up. And so the Secretary is saying, look, you're having all these cases that are in deep freeze because you don't know if they're going to meet the test of Harris inextricably intertwined. And so we're looking at a big problem. I mean, that's what he's suggesting. But that's ridiculous because we know from 1991 you had this doctrine that was pretty broad. And there was no complaint. There was no problem. And to the extent that a few cases do that, I guess I probably shouldn't be confused at this point, but I guess I am a little bit confused. So since 1990, you have, I don't know, 200 Board of Veterans' Appeals decisions a year. I may have got this number, in which some claims are finally resolved and forget about the language of claims or not, right? Some claims are finally resolved and others are remanded. Have those been routinely appealed then and there to the Court of Veterans? I can't speak to that. Or have they not been? I mean, you mean inextricably? No, put aside inextricably intertwined. There are 200 cases a year of sort of divided decisions by the Board of Veterans' Appeals. Certain claims finally resolved, others remanded. In the last 20 years, have there been routine appeals of those or not? Saying that they were denied under the same theory that they didn't have to appeal it then? I guess I'm trying to understand your question. I guess I'm not— The practicalities—the two of you were talking, I guess I'm legitimately confused, I think, have been talking about whether there's a significant practical difference between— In my— —the rule that says you have to appeal when the Board says this claim is done and one that says it's up to the veterans. Which of those two regimes has been in place as a practical matter for the last 20 years? Okay, it's never been ever a place where you say it's up to the veteran appeal. What happened is you had Harris, and Harris said we are going to define jurisdiction this way. If the issues or the claims are inextricably intertwined, one is denied and the other remanded or stayed, we are going to say that we don't have jurisdiction. So it's don't come to us. Okay, that was the test. What happened in Tyrus in the case that we're talking about now is that they said, well, what we want to create is another layer. We're going to create a jurisdictional thing that's absolute, and then underneath there's another layer which we call prudential, and that has taken whole cloth from Tyrus. I guess that's leading me away from the clarity that I'm searching for. Okay. So since Harris said don't come to us if it's inextricably intertwined, so now I'm assuming there are lots of cases in which the two issues, one decided, one not decided, one remanded by the veteran, are not inextricably intertwined. Were those appealed for the last 20 years? I can't speak for that. I mean I had a case called Roebuck which was published, I think it's cited in the briefs, and they followed my argument and followed Harris and said that it's not final. And then all of a sudden they did this. In this case, in Tyrus originally, the original single-member panel I believe was a single-member panel. Am I answering? No. But there hasn't been a lot of litigation on that, to be honest. I don't think you'll find it out there in unpublished cases. One reason there might not have been a lot of litigation is that these mixed decisions were, in fact, routinely appealed. And then the issue wouldn't have come up, oh, 10 years ago you're back on remand from the remand decision. You should have appealed that then. That's one perfectly- And I accept that. I accept that scenario. I think most veterans, when they get a denial, say denial, will do it. But we're talking to a fairly large class of veterans that have mental illness issues. They have literacy issues. They have comprehensive issues. And then all of a sudden, in my opinion, the BDA is bifurcating more than it ever did before. They like it. So that's one of the reasons why you don't have this issue published and litigated a lot. It's become a more frequent practice. So my assumption of 200 bifurcated decisions a year for the last 20 years you think is really not, doesn't match the reality. That there's more of the- I think you're just suggesting maybe there have been only five a year or something. So it's a new problem. Yeah, I think it's a relatively new problem. And it's caused confusion. Now, I just wanted to say this bright line that they're doing it. That there's this bright line that veterans now know because TIRUS is published. And so it's sending out a notice and a message. That's nonsense. Because I've represented many, many veterans. And they don't read published decisions. They don't? Yeah. In fact, I'll go so far as to say that your typical service officer doesn't even know what the data means. What a pro se veteran would do, or should do, is read the notice that they get on a BVA decision. And I will tell you for certain, there has been no change in the notice since this TIRUS decision. So where's the bright line? The bright line is for the court and the VA. It's not for the veteran. And that's just a fact. I think that we're short of time. I believe we have the issues in mind. Thank you both. The case is taken under submission.